# **Exhibit [A]**

Fill in this information to identify your case and this filing:

| Debtor 1 | David M Wetzel | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | Penny Lynn Wetzel | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Western District of Pennsylvania

Case number    17-23732-GLT

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1.**  207 Rex Road
Street address, if available, or other description

Washington            PA       15301
City                     State    ZIP Code

Washington County
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property:*

**Current value of the entire property?**    **Current value of the portion you own?**
$ 15,000.00                    $  15,000.00

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
Joint tenant

☐ Check if this is community property

If you own or have more than one, list here:

**1.2.**  784 Findley Street
Street address, if available, or other description

Washinton            PA
City                     State    ZIP Code

Washington County
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**
$ 3,000.00                    $ 3,000.00

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
Joint tenant

☐ Check if this is community property
(see instructions)

1. 3 ___

796 Baird Avenue
_____
Street address, if available, or other description

_____

Washington          PA     15301
_____
City                State  ZIP Code

Washington County
_____
County

**What is the property?** Check all that apply.

- ☑ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other _____

**Who has an interest in the property?** Check one.

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

**Other information you wish to add about this item, such as local property identification number:**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**
$ 145,000.00

**Current value of the portion you own?**
$ 145,000.00

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
Tenancy by the Entireties

☐ **Check if this is community property**
(see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.** ....................................................➔   | $ 163,000.00 |

---

### Part 2:   Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

- ☐ No
- ☑ Yes

3.1.  Make:  Cadillac
Model:  STS
Year:  2009
Approximate mileage:  120000
Other information:
Condition: Good

**Who has an interest in the property?** Check one.

- ☐ Debtor 1 only
- ☑ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**
$ 3,300.00

**Current value of the portion you own?**
$ 3,300.00

If you own or have more than one, describe here:

3.2.  Make:  Chevrolet
Model:  Silverado
Year:  2012
Approximate mileage:  75000
Other information:
Condition: Good

**Who has an interest in the property?** Check one.

- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**
$ 9,000.00

**Current value of the portion you own?**
$ 9,000.00

Case 17-23732-GLT Doc 91-2 Filed 01/03/18 Entered 01/03/18 13:47:36 Desc Main
Document Page 5 of 49

Case 17-23732-GLT Doc 91-1 Filed 10/24/17 Entered 10/24/17 20:48:47:30 Desc Main
Exhibit A - Loan Documents Page 4 of 43

___.  Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**   **Current value of the portion you own?**

$_____   $_____

___.  Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**   **Current value of the portion you own?**

$_____   $_____

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
☑ Yes

4.1.  Make: **Harley Davidson**

Model: **Road King Classic**

Year: **2008**

Other information:

Condition: Good; Mileage:

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**   **Current value of the portion you own?**

$ 8,450.00   $ 8,450.00

If you own or have more than one, list here:

4.2.  Make: _____

Model: _____

Year: _____

Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**   **Current value of the portion you own?**

$_____   $_____

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ⟶   $ 20,750.00

## Part 3: Describe Your Personal and Household Items

**Do you own or have any legal or equitable interest in any of the following items?**

Current value of the portion you own?

Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   - ☐ No
   - ☑ Yes. Describe. ........  Kitchen appliances, furniture - $500.00, Dining room furniture, china - $750.00, living room furniture - $400.00, bedroom #1 furniture - $400.00, bedroom #2 furniture - $400.00, 3 televisions - $750.00, stereo - $100.00, lawn furniture , mower, tools, misc. - $1,400.00

   $ 4,700.00

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   - ☑ No
   - ☐ Yes. Describe. ........

   $ 0.00

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   - ☑ No
   - ☐ Yes. Describe. ........

   $ 0.00

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   - ☑ No
   - ☐ Yes. Describe. ........

   $ 0.00

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    - ☑ No
    - ☐ Yes. Describe. ........

    $ 0.00

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    - ☐ No
    - ☑ Yes. Describe. ........  Men's clothing - $900.00
       Women's clothing - $1,100.00

    $ 2,000.00

12. **Jewelry**
    Examples: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    - ☐ No
    - ☑ Yes. Describe. ........  Wife - rings, chains & ear rings

    $ 300.00

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    - ☑ No
    - ☐ Yes. Describe. ........

    $ 0.00

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    - ☑ No
    - ☐ Yes. Give specific information...............

    $ 0.00

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...................................................... ➔

    $ 7,000.00

| Part 4: | Describe Your Financial Assets |
|---|---|

**Do you own or have any legal or equitable interest in any of the following?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

16. **Cash**

Examples: Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☑ Yes................................................................................................................................ Cash: ........................ $ 500.00

17. **Deposits of money**

Examples: Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes.....................

Institution name:

| | | |
|---|---|---|
| 17.1. Checking account: | Citizens 6872 | $ 500.00 |
| 17.2. Checking account: | | $ |
| 17.3. Savings account: | | $ |
| 17.4. Savings account: | | $ |
| 17.5. Certificates of deposit: | | $ |
| 17.6. Other financial account: | | $ |
| 17.7. Other financial account: | | $ |
| 17.8. Other financial account: | | $ |
| 17.9. Other financial account: | | $ |

18. **Bonds, mutual funds, or publicly traded stocks**

Examples: Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
☐ Yes.................

Institution or issuer name:

$
$
$

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☑ No
☐ Yes. Give specific information about them. ....................

Name of entity: % of ownership:

%  $
%  $
%  $

**20.** **Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific information about them. .....................

Issuer name:

_____  $_____
_____  $_____
_____  $_____

**21.** **Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No
☐ Yes. List each account separately.
Type of account:

Institution name:

| | | |
|---|---|---|
| 401(k) or similar plan: | _____ | $_____ |
| Pension plan: | _____ | $_____ |
| IRA: | _____ | $_____ |
| Retirement account: | _____ | $_____ |
| Keogh: | _____ | $_____ |
| Additional account: | _____ | $_____ |
| Additional account: | _____ | $_____ |

**22.** **Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☑ No
☐ Yes.........................

Institution name or individual:

| | | |
|---|---|---|
| Electric: | _____ | $_____ |
| Gas: | _____ | $_____ |
| Heating oil: | _____ | $_____ |
| Rental unit: | _____ | $_____ |
| Prepaid rent: | _____ | $_____ |
| Telephone: | _____ | $_____ |
| Water: | _____ | $_____ |
| Rented furniture: | _____ | $_____ |
| Other: | _____ | $_____ |

**23.** **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No
☐ Yes.........................

Issuer name and description:

_____  $_____
_____  $_____
_____  $_____

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No
☐ Yes .................................. Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

_____  $_____
_____  $_____
_____  $_____

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No
☐ Yes. Give specific
information about them. ..                                        $ 0.00

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples*: Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No
☐ Yes. Give specific
information about them. ..                                        $ 0.00

27. **Licenses, franchises, and other general intangibles**
*Examples*: Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No
☐ Yes. Give specific
information about them. ..                                        $ 0.00

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**

☑ No
☐ Yes. Give specific information
about them, including whether
you already filed the returns
and the tax years. ......................

Federal:    $ 0.00
State:      $ 0.00
Local:      $ 0.00

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No
☐ Yes. Give specific information. .............

Alimony:             $ 0.00
Maintenance:         $ 0.00
Support:             $ 0.00
Divorce settlement:  $ 0.00
Property settlement: $ 0.00

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation,
Social Security benefits; unpaid loans you made to someone else

☑ No
☐ Yes. Give specific information. .............                  $ 0.00

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No

☐ Yes. Name the insurance company
of each policy and list its value. ...

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| | | $_____ |
| | | $_____ |
| | | $_____ |

**32. Any interest in property that is due from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No

☐ Yes. Give specific information. ............

$0.00

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No

☐ Yes. Describe each claim. .....................

$0.00

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☐ No

☑ Yes. Describe each claim. ..............

Possible claim against Harley-Davidson for violation of Fair Debt Colletion Act

$Unknown

**35. Any financial assets you did not already list**

☑ No

☐ Yes. Give specific information. ............

$0.00

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here** ....................................................................➜

$1,000.00

---

| **Part 5:** | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |
|---|---|

**37. Do you own or have any legal or equitable interest in any business-related property?**

☑ No. Go to Part 6.

☐ Yes. Go to line 38.

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**

☐ No

☐ Yes. Describe.......

$_____

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☐ No

☐ Yes. Describe.......

$_____

40. **Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☐ No
☐ Yes. Describe....... _____  $_____

41. **Inventory**

☐ No
☐ Yes. Describe....... _____  $_____

42. **Interests in partnerships or joint ventures**

☐ No
☐ Yes. Describe.......   Name of entity:                                    % of ownership:

_____  _____%  $_____
_____  _____%  $_____
_____  _____%  $_____

43. **Customer lists, mailing lists, or other compilations**

☐ No
☐ Yes. **Do your lists include personally identifiable information** (as defined in 11 U.S.C. § 101(41A))?

   ☐ No
   ☐ Yes. Describe......... _____  $_____

44. **Any business-related property you did not already list**

☐ No
☐ Yes. Give specific
  information .........  _____  $_____
                        _____  $_____
                        _____  $_____
                        _____  $_____
                        _____  $_____
                        _____  $_____

45. **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
    for Part 5. Write that number here** ..................................................➔  $ 0.00

---

**Part 6:**   **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
             **If you own or have an interest in farmland, list it in Part 1.**

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
☑ No. Go to Part 7.
☐ Yes. Go to line 47.

Current value of the
portion you own?
Do not deduct secured claims
or exemptions.

47. **Farm animals**
   *Examples*: Livestock, poultry, farm-raised fish

☐ No
☐ Yes......................... _____  $_____

**48. Crops—either growing or harvested**

☐ No
☐ Yes. Give specific
information. ............

$_____

**49. Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

☐ No
☐ Yes...........................

$_____

**50. Farm and fishing supplies, chemicals, and feed**

☐ No
☐ Yes...........................

$_____

**51. Any farm- and commercial fishing-related property you did not already list**

☐ No
☐ Yes. Give specific
information. ............

$_____

**52. Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here** ................................................................➔ $ 0.00

---

**Part 7:    Describe All Property You Own or Have an Interest in That You Did Not List Above**

**53. Do you have other property of any kind you did not already list?**

*Examples:* Season tickets, country club membership

☐ No
☑ Yes. Give specific
information. ............ 0.00000094 interest in gas lease of Miller Estate gas lease for 207 Rex Road, Washington, PA, Trailer

**54. Add the dollar value of all of your entries from Part 7. Write that number here** .......................................➔ $ 375.00

---

**Part 8:    List the Totals of Each Part of this Form**

**55. Part 1: Total real estate, line 2** ....................................................................................................➔ $ 163,000.00

**56. Part 2: Total vehicles, line 5** $ 20,750.00

**57. Part 3: Total personal and household items, line 15** $ 7,000.00

**58. Part 4: Total financial assets, line 36** $ 1,000.00

**59. Part 5: Total business-related property, line 45** $ 0.00

**60. Part 6: Total farm- and fishing-related property, line 52** $ 0.00

**61. Part 7: Total other property not listed, line 54** + $ 375.00

**62. Total personal property.** Add lines 56 through 61. ..................... $ 29,125.00     Copy personal property total ➔ + $ 29,125.00

**63. Total of all property on Schedule A/B.** Add line 55 + line 62. ...................................................... $ 192,125.00

# **Exhibit [B]**

403-NTL-V9

Case 17-23732-GLT Doc 63 Filed 05/28/18 Entered 05/28/18 13:49:? Desc Main
Document Page 1 of 9

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | David M Wetzel |
| | First Name    Middle Name    Last Name |
| Debtor 2 | Penny Lynn Wetzel |
| (Spouse, if filing) | First Name    Middle Name    Last Name |

United States Bankruptcy Court for the Western District of Pennsylvania

| | |
|---|---|
| Case number | 17-23732-GLT |
| (If known) | |

☐ Check if this is an
amended filing

## Official Form 108

# Statement of Intention for Individuals Filing Under Chapter 7    12/15

If you are an individual filing under chapter 7, you must fill out this form if:
- ■ creditors have claims secured by your property, or
- ■ you have leased personal property and the lease has not expired.

You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form.

If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).

| Part 1: | List Your Creditors Who Have Secured Claims |
|---|---|

1. **For any creditors that you listed in Part 1 of** *Schedule D: Creditors Who Have Claims Secured by Property* **(Official Form 106D), fill in the information below.**

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: **Washington County Tax Claim Bureau**<br><br>Description of property securing debt: **207 Rex Road** | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☑ Retain the property and [explain]:<br>     Pay over time allowed secured tax amount | ☐ No<br>☑ Yes |
| Creditor's name: **Ditech Financial LLC**<br><br>Description of property securing debt: **796 Baird Avenue** | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☑ Retain the property and [explain]:<br>     Extend Payments Though Loan Modification | ☐ No<br>☑ Yes |
| Creditor's name: **Internal Revenue Service**<br><br>Description of property securing debt: **Personal property, bank account** | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☑ Retain the property and [explain]:<br>     Dtermine secured portion of tax claim and pay o | ☐ No<br>☑ Yes |
| Creditor's name: **Washington County Tax Claim Bureau**<br><br>Description of property securing debt: **784 Findley Street** | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☑ Retain the property and [explain]:<br>     Pay over time allowed secured amount | ☐ No<br>☑ Yes |

| Debtor | David M Wetzel & Penny Lynn Wetzel | Case number (If known) | 17-23732-GLT |
|---|---|---|---|

---

**Part 2:**    List Your Unexpired Personal Property Leases

For any unexpired personal property lease that you listed in *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 106G), fill in the information below. Do not list real estate leases. *Unexpired leases* are leases that are still in effect; the lease period has not yet ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).

| Describe your unexpired personal property leases | Will the lease be assumed? |
|---|---|
| Lessor's name: _____ | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: _____ | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: _____ | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: _____ | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: _____ | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: _____ | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: _____ | ☐ No |
| Description of leased property: | ☐ Yes |

---

**Part 3:**    Sign Below

Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal property that is subject to an unexpired lease.

**✖** /s/ David M Wetzel        **✖** /s/ Penny Lynn Wetzel

Signature of Debtor 1        Signature of Debtor 2

Date   05/23/2018        Date   05/23/2018
     MM / DD / YYYY           MM / DD / YYYY

Case 17-23732-GLT   Doc 91-2   Filed 01/03/19   Entered 01/03/19 12:47:36   Desc Main
Document   Page 15 of 43

Case 17-23732-GLT   Doc 63-1   Filed 05/28/18   Entered 05/28/18 10:02:47   Desc Main
Exhibit A Loan Documents   Page 3 of 3   17-23732-GLT

| Debtor 1 | | | | Case number *(if known)* |
|----------|--|--|--|--------------------------|
| David M Wetzel & Penny L Wetzel | | | | |
| First Name | Middle Name | Last Name | | |

## Continuation Sheet for Official Form 108

1) Creditors who have secured claims

| | | | |
|--|--|--|--|
| Washington County Tax Claim Bureau | 796 Baird Avenue | Has exemptions | Repay allowed secured amount over time |
| ALLY | 2009 Cadillac STS | No exemptions | surrender |
| Wells Fargo Dealer Services | 2012 Chevrolet Silverado | No exemptions | Redeem |
| Harley Davidson Credit Corp. | 2008 Harley Davidson Road King Classic | No exemptions | Have current claim against Harley Davidso |

# **Exhibit [C]**

NFIDENTIAL                                                                                            CO

# Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| MARY M JOHNSON<br>796 BAIRD AVE<br>WASHINGTON PA 15301 | CITIFINANCIAL SERVICES,<br>INC.<br>2 NORTH MAIN STREET<br>WASHINGTON PA 15301-4508 | Date of Loan<br>08/26/2008 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 12.35 % | $ 252,654.98 | $ 112,905.54 | $ 365,560.52 |

Payment Schedule:

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 1 | $ 1,333.67 | 10/05/2008 |
| 299 | $ 1,218.15 | MONTHLY BEGINNING 11/05/2008 |
|  | $ |  |
|  | $ |  |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

Security: If checked, Borrower is giving a security interest in:
[X] Real Property
[ ] Mobile Home or Manufactured Home

Late Charge: If a payment is more than 15 days late, Borrower will be charged a late charge of the greater of $ 20.00 or 10.0 % of the payment amount.

Prepayment: If Borrower pays off early, Borrower:
[X] will not [ ] may have to pay a penalty, and will not be entitled to a refund of part of the finance charge.

* Does not include any insurance premium.
Additional Information:

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL | POINTS | DATE CHARGES BEGIN |
|---|---|---|---|
| $ 1,333.67 | $ 116,344.21 | $ 3,388.67 | 09/02/2008 |

**Required Insurance Disclosure:**
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

**Optional Insurance Disclosure:**
Borrower is not required to purchase optional insurance products, such as: **Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products.** Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

**Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.**

**Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.**

**If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.**

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: | | |
|---|---|---|---|---|
| $         NONE | $ | | *Mary M Johnson* | *8/26/08* |
| $         NONE | $ | | First Borrower's Signature | Date |
| $         NONE | $ | | | |
| | | | Second Borrower's Signature | Date |

(* First year's premiums are calculated on the assumption that monthly loan payments are timely made). Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**
Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:
(1)   the Lender's receipt of Borrower's written request for termination;
(2)   on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3)   termination pursuant to the provisions of the insurance certificate;
(4)   payment in full of Borrower's Loan;
(5)   death of Borrower.

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the Lender, whose name and address are shown above.

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above until fully paid at the following Rate of Interest:

**RATE OF INTEREST:**
11.92% per annum on the entire unpaid Principal balance. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan.

Any amount shown above as Points has been paid by Borrower as points and any amount shown below as a Buydown Fee paid by a party other than Borrower as a buydown fee. These amounts are considered prepaid charges and are in addition to the above Rate of Interest. Any Points or Buydown Fee are earned prior to any other interest on the loan balance, and in the event of prepayment of the loan, will not be refundable to Borrower.

$ NONE        has been paid by a party other than Borrower as a Buydown Fee.
Principal and interest shall be payable in the substantially equal monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Over $50,000 - 1st Mortgage

Borrower's Initials: *MMJ*

Original (Branch)        Copy (Customer)                                    Page 1 of 3

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity and after a judgement is entered upon the unpaid Principal balance at either the maximum rate permitted by the then applicable law or the rate of interest prevailing under this Disclosure Statement, Note and Security Agreement.

LATE CHARGE: If any installment is paid more than 15 days after the scheduled payment date, Borrower agrees to pay a late charge of the greater of $ 20.00 or 10.0% of the installment amount. Lender may, at its option, waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment.

PREPAYMENT: Borrower may make a full or partial prepayment of the unpaid Principal balance at any time (check applicable box):

[x] If this box is checked. Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

[ ] If this box is checked and Borrower prepays the entire outstanding Principal amount of this loan during the first three (3) years from the date of the loan, Lender may charge Borrower a prepayment penalty equal to a percentage of the amount prepaid as follows: for prepayment in full within one year of the date of the loan, 3%; within two years, 2%; and within three years, 1%. Upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or due date of subsequent payments on the loan, but may reduce the number of such payments.

Borrower understands if the terms of this paragraph provide for a prepayment penalty, such terms do not apply to a renewal or refinancing of this loan by Lender, nor to the prepayment of this loan from the proceeds of any loan made in the future by Lender to Borrower. No prepayment charge will be collected if the loan is accelerated due to Borrower's default or Lender's exercise of any due on sale clause in the Deed of Trust securing this obligation.

SECURITY: This loan is secured by a lien against the real property located at 796 BAIRD AVE
WASHINGTON PA 15301
See Mortgage or Deed of Trust for terms applicable to Lender's interest in Borrower's real property ("Property").

INSURANCE: If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

RETURNED CHECK FEES: Lender may charge a fee, not to exceed $ 20.00, if a check, negotiable order of withdrawal or share draft is returned for insufficient funds or insufficient credit.

LOAN CHARGES: If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

DEFAULT: Borrower will be in default if he does not make any scheduled payment on time or fails to comply with the provisions of any mortgage on the real property which secures this loan. If Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance and any accrued interest at once. Lender's failure to exercise or delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this agreement. As permitted by Pennsylvania Law, Borrower agrees to pay actual and reasonable attorney's fees, court costs, and other actual and reasonable costs incurred in foreclosing on the real property securing this loan. Borrower will receive written notice at least 30 days prior to foreclosure.

LAW THAT APPLIES: Pennsylvania law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

(Intentionally left blank)

Over $50,000 - 1st Mortgage

Original (Branch)      Copy (Customer)

Borrower's Initials: _mmj_

Page 2 of 3

NFIDENTIAL                                                                                  CO

MARY ~ JOHNSON                                                                    08/26/2008

**AUTHORIZATION TO USE CREDIT REPORT:** By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

The following notice applies only if this box is checked. ☐

<div style="border:1px solid black">

### NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

</div>

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein.

WITNESSES:                                          SIGNED:

_Eric Roberts_                                      _Mary M. Johnson_                (Seal)
_____                             MARY M JOHNSON                   -Borrower
                                                    _____          (Seal)
                                                                                     -Borrower
_____                             _____          (Seal)
                                                                                     -Borrower
_Eric Roberts_                                      CITIFINANCIAL SERVICES, INC.

_____                             By _____ BAE 2
                                                       (Name and Title)      08/26/2008  12:24:38

**SECURITY INTEREST OF NONOBLIGOR:** Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal) _____              _____ (Seal) _____
Signature                       Date                Signature                       Date

Over $50,000 - 1st Mortgage

_____

                          Original (Branch)    Copy (Customer)                      Page 3 of 3

## ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING
DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A
PERMANENT PART OF SAID NOTE.

Account Number: ███████

Note Date: 08/26/2008

Amount: $ 116,344.21

Customer Name:　Mary M. Johnson

Property Address: 796 Baird Ave., Washington, PA 15301

✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱

## PAY TO THE ORDER OF:

## WITHOUT RECOURSE

CFNA Receivables (PA), Inc. f/k/a CitiFinancial Services, Inc., a Pennsylvania
corporation

BY: *Teresa G Harris*

Name:　Teresa G Harris
Title:　Assistant Vice President

This Rider Amends the Disclosure Statement, Note and Security Agreement Entered Into On Date Below

### Agreed Rate Reduction Rider

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| MARY M JOHNSON<br>796 BAIRD AVE<br>WASHINGTON PA 15301 | CITIFINANCIAL SERVICES,<br>INC.<br>2 NORTH MAIN STREET<br>WASHINGTON PA 15301-4508 | ▆▆▆▆▆▆ |
| | | Date of Loan<br>08/26/2008 |

Borrower has agreed to pay the rate of interest set forth in the Disclosure Statement, Note and Security Agreement (hereinafter referred to as "the Note" and/or the "Note Rate"), until the full amount of principal has been paid. However, if on any one of the second, third or fourth anniversaries of the scheduled due date of the first full installment payment due date under the Note (each, an "Anniversary Date") Borrower has demonstrated a Good Payment History, Lender agrees to decrease the Note Rate to 11.42 %. Borrower will be deemed to have demonstrated a "Good Payment History" if Borrower: (a) has made each of the most recent 24 consecutive monthly payments under the Note before the date the next payment was due; (b) has never been late by 91 days or more in making any monthly payments due under the Note; (c) neither Borrower nor Co-Borrower has filed petitions in bankruptcy during the term of the loan; and (d) no provision of the Note has been modified prior to the Anniversary Date. Modifications to the Note include deferment of a scheduled payment, legal action with respect to enforcement of the Note or the Mortgage, and an adjustment of the loan terms. If Borrower demonstrates a Good Payment History, the new Note Rate will take effect one month after the earliest Anniversary Date on which Borrower has demonstrated a Good Payment History ("Rate Reduction Date"). Beginning with Borrower's first monthly payment after the Rate Reduction Date, Borrower will pay the new amount as the monthly payment until the Maturity Date. Lender will decrease Borrower's Note Rate only one time during the term of the loan, provided Borrower demonstrates a Good Payment History on any one of the second, third, or fourth Anniversary Dates.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Agreed Rate Reduction Rider.

_Mary M Johnson_
Borrower

_8/26/2008_
Date

_____
Co-Borrower

_____
Date

(New/Renewal) ▆▆▆▆▆▆▆

**Original (Branch)    Copy (Customer)**

# **Exhibit [D]**

Prepared by:
CITIFINANCIAL SERVICES,
INC.
2 NORTH MAIN STREET
WASHINGTON PA 15301-4508

WHEN RECORDED RETURN TO:
Equity Loan Services, Inc.
1100 Superior Ave., Ste. 200
Cleveland, OH 44114
National Recording-Team 3

# MORTGAGE

THIS MORTGAGE is made this 26th day of August , 2008 , between the Mortgagor,
MARY M JOHNSON , ROBERT E JOHNSON (DECEASED)

(herein "Borrower"),

and the Mortgagee, CITIFINANCIAL SERVICES, INC.
a corporation organized and existing under the laws of Pennsylvania
whose address is 2 NORTH MAIN STREET   WASHINGTON PA 15301-4508
(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ 116,344.21 , which
indebtedness is evidenced by Borrower's note dated 08/26/2008 and extensions and renewals thereof (herein
"Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not
sooner paid, due and payable on 09/05/2033 :

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the
payment of all other sums, with the interest thereon, advanced in accordance herewith to protect the security of
this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower
does hereby mortgage, grant and convey to Lender the following described property located in the County of
WASHINGTON , State of Pennsylvania:

ALL THAT CERTAIN PARCEL OF LAND IN TOWNSHIP OF CANTON,
WASHINGTON COUNTY, COMMONWEALTH OF PA, AS MORE FULLY
DESCRIBED IN BOOK 2011 PAGE 70 ID# 120-011-09-02-0001-00, BEING
KNOWN AND DESIGNATED AS LOTS 725 AND 726 GORDON LAND COS
ADD TO WASHINGTON
BEING THE SAME FEE SIMPLE PROPERTY CONVEYED BY DEED FROM
MYRA L. BONCZEK TO ROBERT E. JOHNSON AND MARY M.
JOHNSON HUSBAND AND WIFE, DATED 10/27/1980 RECORDED ON
11/10/1980 IN BOOK 2011, PAGE 70 IN WASHINGTON COUNTY RECORDS,
COMMONWEALTH OF PA.

JOHNSON

PA

FIRST AMERICAN ELS
MORTGAGE

BEING premises which are more fully described in a deed dated the 27th day of OCTOBER , 1980 ,
and recorded in the Office of the Recorder of Deeds of WASHINGTON
County, Pennsylvania, in Record Book 2011 , Volume , Page 70

PA 0042-10 7/2006    Original(Recorded)    Copy(Branch)    Copy(Customer)    Page 1 of 7

MARY M JOHNSON                                    08/26/2008

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

MARY M JOHNSON                                     08/26/2008

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as ender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and    Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

PA 0042-10  7/2006    Original(Recorded)    Copy(Branch)    Copy(Customer)             Page 3 of 7

MARY M JOHNSON                                    08/26/2008

9.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which priority over this Mortgage.

10.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.  **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12.  **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13.  **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14.  **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15.  **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

MARY M JOHNSON                                            08/26/2008

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided by applicable law specifying, among other things: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts and title reports.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to at least one hour before the commencement of bidding at a sheriff's sale or other sale pursuant to this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

MARY M JOHNSON                                  08/26/2008

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collections of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

20.  **Release.**  Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21.  **Interest Rate After Judgment.**  Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate stated in the Note.

22.  **Hazardous Substances.**  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 22, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

(Intentionally left blank)

MARY M JOHNSON                                          08/26/2008

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or
other encumbrance with a lien which has priority over this Mortgage to give
Notice to Lender, at Lender's address set forth on page one of this Mortgage,
with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under
the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Witness: _____     _Mary M Johnson_____

                                     MARY  M  JOHNSON          – Borrower

                                     _____ – Borrower

I hereby certify that the precise address of the Lender (Mortgagee) is: _____

2  N.  MAIN  ST  WASHINGTON  PA  15301

On behalf of the Lender. By: W. BRIAN JOHNSON Title _BAE 2_

COMMONWEALTH OF PENNSYLVANIA, WASHINGTON County ss:

On this, the ___26TH___ day of ___AUGUST___, ___2008___, before me,

A  NOTARY  PUBLIC _____ the undersigned officer, personally appeared

MARY  M  JOHNSON

known to me for satisfactorily proven) to be the person whose name ___IS___ subscribed
to the within instrument and _____SHE_____ executed the same for the
purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission expires: 7-12-12

                                     Eric Robaugh
                                     Eric Robaugh
                                     Title of Officer

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Eric Robaugh, Notary Public
City of Washington, Washington County
My Commission Expires July 12, 2012
Member, Pennsylvania Association of Notaries

PA 0042-18 7/2006   **Original (Recorded)**   Copy (Branch)   Copy (Customer)   Page 7 of 7
                    (Space Below This Line Reserved For Lender and Recorder)

Commonwealth of Pennsylvania      }
                                  } ss.
County of _____        }

Recorded on this_____ day of _____, _____, in the Office for
Recording Deeds of said County, in Mortgagee Book No. _____, Page _____.

                                                              RECORDER

## OPEN-END MORTGAGE

This is an open-end Mortgage and subject to the provisions of the Act of 1990,
October 12, PL 525, No. 126, 42 Pa.C.S.A. §8143.

THIS MORTGAGE is made this ___1___ day of __OCTOBER__, 20_10_ between the
Mortgagor, MARY M. JOHNSON, of 796 BAIRD AVENUE, CANTON TOWNSHIP, WASHINGTON,
WASHINGTON COUNTY, PENNSYLVANIA (herein "Borrower"), and the Mortgagee REDEVELOPMENT
AUTHORITY OF THE COUNTY OF WASHINGTON, a body corporate and politic with principle offices
located at 100 West Beau Street, Suite 603, Washington, Washington County, Pennsylvania 15301 (herein
"Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of up to Twenty-Three
Thousand and 00/100 ($23,000.00) Dollars, which indebtedness is evidenced by Borrower's Note dated
__OCTOBER 1__, 20_10_, and extensions and renewals thereof (herein "Note"), providing repayment, with
the balance of the indebtedness, if not sooner paid, due and payable on __OCTOBER 1__, 20_20_ unless
waived, excused or released as herein provided.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest
thereon; the payment of all other sums, with the interest thereon, advanced in accordance herewith to protect the
security of this Mortgage; and the performance of the covenants and agreement of Borrower herein contained,
Borrower does hereby mortgage, grant and convey to Lender the property described in attached Exhibit "A" more
particularly described in Deed Book Volume 2011 Page 70 located in the County of Washington, Commonwealth
of Pennsylvania, which has the address of 796 Baird Avenue, Canton Township, Washington, Washington
County, Pennsylvania, Parcel Identification Number of 120-011-G9-02-0001-00.

TOGETHER with all the improvements now or hereafter erected on the property, and all
easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property
covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this
Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the
right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for
encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the
Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS.    Borrower and Lender covenant and agree as follows:

1.    Payment of Principal and Interest.  Borrower shall promptly pay when due
the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.  The
principal amount and any interest due on that amount shall be excused, released and waived over a period of ten
(10) years at ten percent (10%) per annum, as long as Borrower remains in occupancy in accordance with the
rules, regulations and policies of the Lender with regard to Rehabilitation Loans.  The failure of Borrower to
occupy the property in accordance therewith shall be a breach of this Mortgage.

2.    Application of Payments.  Unless applicable law provides otherwise, all
payments received by Lender under the Note and Paragraph 1 hereof shall be applied by Lender first to interest
payable on the Note and then to the principal of the Note.

3.    Prior Mortgages and Deeds of Trust; Charges; Liens.  Borrower shall perform
all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has
priority over this Mortgage, including Borrower's covenants to make payments when due.  Borrower shall

pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

4.      Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the terms "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within thirty (30) days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

5.      Preservation and Maintenance of Property. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property.

6.      Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest.

Any amounts disbursed by Lender pursuant to the paragraph 6, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms or payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder.

7.      Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

8.      Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

9.      Borrower Not Released; Forbearance by Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

10.     Successors and Assigns Bound; Joint and Several Liability; Co-signors. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 15 hereof. All

covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

11.    Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

12.    Governing Law; Severability. The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be

given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

13.    Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

14.    Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, regulation, policy or procedure. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

15.    Occupancy; Transfer of the Property. Borrower agrees that Borrower shall, during the entire period of this Mortgage, occupy the premises. If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage or (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Mortgage unless Lender releases Borrower in writing.

If Lender, on the basis of any information obtained regarding the transferee, reasonably determines that Lender's security may be impaired, or that there is an unacceptable likelihood of a breach of any covenant or agreement in this Mortgage, or if the required information is not submitted, Lender may declare all of the sums secured by this Mortgage to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with Paragraph 11 hereof. Such notice shall provide a period of not less than thirty (30) days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by Paragraph 16 hereof.

3

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

16.    Acceleration; Remedies.  Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided by applicable law specifying, among other things: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than thirty days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure.  If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding.  Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorney's fees, and costs of documentary evidence, abstracts and title reports.

17.    Borrower's Right to Reinstate.  Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time at least one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Mortgage if:  (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in Paragraph 16 hereof, including, but not limited to, reasonable attorney's fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired.  Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

18.    No Lease.  Borrower shall not lease the subject premises to any party while the mortgage remains in effect and any such lease shall be deemed a breach of the terms of the Mortgage.

Upon acceleration under Paragraph 16 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed received, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due.  All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Mortgage.  Lender and the receiver shall be liable to account only for those rents actually received.

19.    Release.  Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without charge to Borrower.  Borrower shall pay all costs of recordation, if any, including costs of preparation of a recordable satisfaction.

4

20.   Interest Rate After Judgment.  Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate stated in the Note.

### REQUEST FOR NOTICE OF DEFAULT AND
### FORECLOSURE UNDER SUPERIOR MORTGAGES
### OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage the day and year first above written.

Witness:

_____                    _____
                                                    Mary M. Johnson

_____                    _____


Commonwealth of Pennsylvania          )
                                      )        SS:
County of Washington                  )

On this, the ___1st___ day of __October__, 20_10_, before me, a notary public, the undersigned officer, personally appeared Mary M. Johnson  known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Gregory Damarest, Notary Public
City of Washington, Washington County
My Commission Expires May 21, 2013
Member, Pennsylvania Association of Notaries

_____
Notary Public
My Commission Expires: 5-21-13

### CERTIFICATE OF RESIDENCE

I hereby certify that the address of the Mortgagee within named is
100 W. Beau Street, Suite 603, Washington, PA 15301

# EXHIBIT A

**Legal Description:**

ALL those two certain lots or parcels of ground situate in Canton Township, Washington County, Pennsylvania, in what is known as the Gordon Land Company's Addition to West Washington, bounded and described as follows:

PARCEL FIRST: That certain lot of ground beginning at the southwest corner of Lot No. 725 at corner of Alley "C" and Baird Avenue; thence along Baird Avenue a distance of 75 feet to a point; thence in an easterly direction through Lot No. 725 on a line parallel to Alley "C" a distance of 30 feet to Lot No. 726; thence in a southerly direction along the line dividing Lot No. 725 and Lot No. 726 a distance of 75 feet to Alley "C"; thence along Alley "C" a distance of 30 feet to the place of beginning.  Being the southerly half of Lot No. 725 in the Gordon Land Company's Addition to West Washington.

PARCEL SECOND: All of Lot No. 726 and the northerly one-half of Lot No. 725 in the Gordon Land Company's Addition to West Washington, beginning at a point at the northwesterly corner of Lot No. 725 which point is at the intersection of Baird Avenue and Findlay Street; thence along the southerly side of Findlay Street in an easterly direction 60 feet to a point; thence along the dividing lines between Lots No. 726 and 727 in a southerly direction 150 feet to a point on Alley "C"; thence along Alley "C" in a westerly direction 30 feet to a point at the southeasterly corner of Lot No. 725; thence along the dividing lines between Lots No. 725 and 726 in a northerly direction 75 feet to a point; thence through Lot No. 725 in a westerly direction 30 feet to a point on Baird Avenue; thence along Baird Avenue in a northerly direction 75 feet to a point, the place of beginning.

DEBORAH BARDELLA
RECORDER OF DEEDS
WASHINGTON, PA
Pennsylvania

INSTRUMENT NUMBER
201031594
RECORDED ON
Oct 07, 2010
1:23:04 PM
Total Pages: 6

RECORDING FEES    $67.50
TTAL PAID    $67.50

RCV: '54674 USER: BH

# Exhibit [E]

Prepared By:
D.Larose/NTC, 2100 Alt. 19
North, Palm Harbor, FL
34683 (800)346-9152

When Recorded Return To:
CitiFinancial Servicing, LLC
C/O Nationwide Title
Clearing, Inc. 2100 Alt. 19
North
Palm Harbor, FL 34683
NTC Order █████████
CMS Loan # ████████

# ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS C/O CITIMORTGAGE, INC., 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST A, WHOSE ADDRESS IS 1600 SOUTH DOUGLASS ROAD, SUITE 200-A, ANAHEIM, CA 92806, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 08/26/2008 in the amount of $116,344.21 made by **MARY M JOHNSON AND ROBERT E JOHNSON (DECEASED)** to **CITIFINANCIAL SERVICES, INC., A PENNSYLVANIA CORPORATION** recorded on 08/28/2008, in the Office of the Recorder of Deeds of **WASHINGTON** County, **Pennsylvania**, in **Book , Page , and/or Document # 200822619**.

SEE ATTACHED EXHIBIT A
Tax Code/ PIN: ████████

Property commonly known as: 796 BAIRD AVE TWP. OF CANTON, WASHINGTON, PA 15301

Dated on ___*11 / 9*___ /2017 (MM/DD/YYYY).
**CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY**

By: ___*Susan Schotsch*___
    Susan Schotsch
    **VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

NTC Order # ▮▮▮▮▮▮
CMS Loan # ▮▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ___11 / 9 /2017
(MM/DD/YYYY), by Susan Schotsch as VICE PRESIDENT of CITIFINANCIAL
SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, who, as such
VICE PRESIDENT being authorized to do so, executed the foregoing instrument for
the purposes therein contained. He/she/they is (are) personally known to me.

_____
Ewa Iwona Kirsanov
Notary Public - State of FLORIDA
Commission expires: 10/13/2020

EWA IWONA KIRSANOV
Notary Public - State of Florida
My Commission ▮▮▮▮▮
Expires October 13, 2020

Assignment of Mortgage from: **CITIFINANCIAL SERVICING LLC, A DELAWARE
LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS C/O CITIMORTGAGE,
INC., 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368, (ASSIGNOR),**
to: **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH
MORTGAGE LOAN TRUST A, WHOSE ADDRESS IS 1600 SOUTH DOUGLASS
ROAD, SUITE 200-A, ANAHEIM, CA 92806, ITS SUCCESSORS AND ASSIGNS,
(ASSIGNEE)**
Mortgagor: **MARY M JOHNSON AND ROBERT E JOHNSON (DECEASED)**

Said Mortgage dated 08/26/2008  in the amount of $116,344.21 made by **MARY M
JOHNSON AND ROBERT E JOHNSON (DECEASED)** to **CITIFINANCIAL
SERVICES, INC., A PENNSYLVANIA CORPORATION**, recorded on 08/28/2008, in the
Office of the Recorder of Deeds of WASHINGTON County, Pennsylvania, in Book , Page ,
and/or Document # 200822619.

All that certain lot or piece of ground situated in
Mortgage Premise: 796 BAIRD AVE TWP. OF CANTON
                        WASHINGTON, PA 15301, WASHINGTON COUNTY
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

I, **Susan Schotsch**, hereby certify that the below information and address for the assignee are
correct:
**WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH
MORTGAGE LOAN TRUST A, WHOSE ADDRESS IS 1600 SOUTH DOUGLASS
ROAD, SUITE 200-A, ANAHEIM, CA 92806, ITS SUCCESSORS AND ASSIGNS,
(ASSIGNEE)**

By: _____
    **Susan Schotsch     VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed
this document and supporting documentation prior to signing.

## EXHIBIT A

ALL THAT CERTAIN PARCEL OF LAND IN TOWNSHIP OF CANTON,
WASHINGTON COUNTY, COMMONWEALTH OF PA, AS MORE FULLY
DESCRIBED IN BOOK 2011 PAGE 70 ID# 120-011-09-02-0001-00, BEING
KNOWN AND DESIGNATED AS LOTS 725 AND 726 GORDON LAND COS
ADD .TO WASHINGTON
BEING THE SAME FEE SIMPLE PROPERTY CONVEYED BY DEED FROM
MYRA L. BONCZEK TO ROBERT E. JOHNSON AND MARY M.
JOHNSON HUSBAND AND WIFE, DATED 10/27/1980 RECORDED ON
11/10/1980 IN BOOK 2011, PAGE 70 IN WASHINGTON COUNTY RECORDS,
COMMONWEALTH OF PA.

# **Exhibit [F]**

## ADJUSTMENT OF TERMS AGREEMENT

| Borrower(s) (Name and Address) | Lender (Name and Address) | Account No. |
|---|---|---|
| MARY M JOHNSON<br><br>796 BAIRD AVE<br>WASHINGTON PA 15301 | CitiFinancial<br>2 N MAIN ST<br><br>WASHINGTON PA 15301 | ▆▆▆▆▆▆<br>Date<br>11/11/2009 |

This Adjustment of Terms Agreement ("Agreement") is made this  11/11/2009  (the "Effective Date") by and between  MARY M JOHNSON                                             ,
("Borrower") and  CITIFINANCIAL SERVICES, INC.                          to amend and supplement the Disclosure Statement, Note and Security Agreement, or Note, as applicable, (the "Note"), and applicable riders, if any, executed by Borrower dated  08/26/2008  in the original principal amount of $     116,344.21   .

Borrower acknowledges that Lender is the holder and the owner of the Note and understands the Lender may transfer the Note, as amended by this Agreement, and that anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the "Lender" in this Agreement.

[x] If checked, the Note is secured by real and/or personal property pursuant to a Mortgage, Deed of Trust, Deed to Secure Debt or other security agreement (the "Security Instrument") dated  08/26/2008 . Said Security Instrument conveys the real and/or personal property described in such security instrument (the "Property").

Borrower now requests to extend and rearrange the time and manner of repayment of the Note and to extend and carry forward the lien(s) on the Property, if any. Lender has agreed to Borrower's request.

For and in consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

    1. <u>Acknowledgement of Principal Balance</u>: Borrower acknowledges that as of the Effective Date and except for the additional amounts described in paragraph below, the amount payable under the Note and secured by the Security Instrument, if any, is $ 115,828.78    ("Unpaid Principal Balance").

The Borrower acknowledges and agrees that in addition to the Unpaid Principal Balance described above, Borrower is currently obligated to Lender for additional charges in the amount of $ 1,917.49            herein referred to as the "Deferred Amount." This amount could include accrued and/or deferred interest advances made by Lender for real estate taxes and/or hazard insurance premiums ("Escrow Advances"), appraisal fees, attorney's costs and other legal fees if any, and any other unpaid fees that may have accrued under the terms of Note. The Deferred Amount has accrued or been incurred under the terms of the loan documents and/or Security Instrument or under the terms of this Agreement.

The Deferred Amount is in addition to the Unpaid Principal Balance. The Deferred Amount shall continue to be due and owing by Borrower to Lender in accordance with the terms of the Note, the Security Instrument, and this Agreement; provided however, Lender agrees that for so long as Borrower makes principal and interest payments in a timely manner and ultimately pays the Deferred Amount to the extent obligated under the terms of Note and Security Instrument, Lender will not seek to enforce its right to collect under the Note or Security Instrument solely for the failure to pay the Deferred Amount. If not sooner demanded, the Deferred Amount shall be due and payable upon the earlier of voluntary payoff or the Revised Maturity Date set forth in Section 2 below. In addition to the Original Principal Balance and Deferred Amount, Borrower is also responsible for any unpaid late fees, which are reflected on the monthly billing statement.

▆▆▆▆▆▆      Original (Branch)    Copy (Customer)          Page 1 of 3

2. <u>Repayment Terms</u>: Borrower promises to pay the Unpaid Principal Balance, plus interest, to the Lender according to the following terms:

| | |
|---|---|
| Revised Interest Rate | 9.40 % |
| Revised Interest Rate Effective Date | 11/11/2009 |
| Revised Monthly Payment (not including monthly insurance premiums or escrow, if applicable) | $ 1,006.58 |
| Due Date of First Revised Payment | 12/05/2009 |
| Revised Maturity Date | 08/05/2034 |

The Revised Maturity Date is based upon the principal balance projected to exist at the time the Revised Interest Rate expires and the Revised Monthly Payment, and assumes Borrower makes timely payments as scheduled without future modification of the remaining loan terms. All amounts still owed by Borrower under the Note and Security Instrument, including any unpaid Deferred Amounts under this Agreement or any prior Adjustment of Terms Agreement(s), are due and payable on the Revised Maturity Date.

3. Additional Terms:

a. If the Note is a precomputed loan, it is hereby converted to an interest bearing loan, which means simple interest will accrue on the Unpaid Principal Balance each day until the loan is paid in full.

b. If the Note is a variable rate loan, it is hereby converted to a fixed rate loan and the payment and interest rate will not increase or decrease other than as provided for in this Agreement, for the remainder of the life of the loan.

c. By executing this Agreement, Borrower waives any rate reduction to which Borrower may have otherwise been entitled under the terms of the Note, any Rate Reduction Rider or similar rider to the Note.

d. Although the loan has been modified and the original loan term has been adjusted, this does not change the amount of coverage or terms of the insurance originally written in connection with Borrower's loan. For those who purchased a monthly insurance product, the monthly premium will be added to the monthly loan amount described in paragraph 2 and will be indicated on the monthly statements. Purchased insurance coverage remains in force according to the original certificate or policy issued regardless of any rescheduling and/or adjustment of loan payments or extension by Lender. Further, the insurance may not cover as much of the debt and/or loan payment as it might have before the loan was rescheduled, adjusted or extended and the insurance may expire before the loan is paid in full.

e. If Borrower currently participates in automated payments, Lender may continue automatic drafts for the payment amount agreed to under the original Note unless Borrower requests that Lender update the automatic draft to withdraw the lower payment agreed to by the parties in this Agreement.

f. It is the intention of the parties that all liens and security interests described in the Security Instrument, if any, are hereby renewed and extended until the Indebtedness evidenced by the Note, as renewed, modified and extended hereby has been fully paid. Lender and Borrower agree that such extension, renewal, amendment, modification, or rearrangement shall in no manner affect or impair the Note or the lien and security interests securing the same, if any, the purpose of this Agreement being simply to extend, modify, amend or rearrange the time and manner of payment of the Note and the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, if any, which are expressly acknowledged by the Borrower to be valid, subsisting and in full force and effect so as to fully secure the payment of the Note. The Borrower expressly waives the benefit of any and all statutes of limitation which might otherwise inure to the Borrower's benefit, or be in any way applicable to the Borrower's obligations under the terms of any and all instruments described herein.

Original (Branch)   Copy (Customer)

g. As amended hereby, the provisions of the Note and Security Instrument, if any, shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's obligations to Lender thereunder. In the event of an inconsistency between this Agreement and the terms of the Note and Security Instruments, if any, this Agreement shall govern. Nothing in this Agreement shall be construed to be a satisfaction or release in whole or in part of the Note and Security Instrument, if any. Except as specifically provided for in this Agreement, the Note and Security Instruments, if any, will remain unchanged and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement. Any default by the Borrower in the performance of its obligations under this Agreement shall constitute a default under the Note and Security Instrument, if any, and shall allow Lender to exercise all of its remedies set forth in the Note and/or Security Instrument.

h. Borrower acknowledges that the monthly payments on the Note, as modified and set forth in this Agreement, do not include any required escrow payments for taxes and insurance or other payments. Borrower acknowledges and agrees that in the event that Escrow Advances are included in the amount owed set forth in this Agreement and such Escrow Advances are returned to the Lender for any reason, then the amount of such Escrow Advances returned to the Lender may be applied to Borrower's escrow account, to reduce the amount of the Unpaid Principal Balance, and/or to reduce the amount of the Deferred Amount, at the Lender's sole discretion, regardless of whether those Escrow Advances are placed in the Unpaid Principal Balance or in the Deferred Amount under this Agreement.

i. Nothing in this Agreement shall be construed to impose personal liability to repay any obligation under the Note, as modified by this Agreement, on any Borrower whose obligations have been discharged in Bankruptcy.

j. Borrower acknowledges that the Deferred Amount set forth above may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless, Borrower acknowledges that such Deferred Amount is due and payable as set forth above.

k. No Oral Agreements: The written Loan Agreements represent the final agreements between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

_Mary M. Johnson_
Borrower MARY M JOHNSON

Borrower

**LENDER**
CitiFinancial

By: _Eric Robaugh_

Original (Branch)    Copy (Customer)